U.S. FILED
DISTRICT COURT
EASTERN DISTRICT OF LA.

2004 JUN 14  PM 3: 12

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

NCO FINANCIAL SYSTEMS, INC.,    )   Civil Action No. **04-1667**
                                )
                   Plaintiff,   )   **SECT. I MAG.5**
                                )
v.                              )
                                )
KEITH KREMINSKI, DEREK          )
DEHOOG, DONALD PESQUIE,         )
GERALD HEAP, and FINANCIAL      )
RISK MITIGATION, INC.,          )
                                )
                  Defendants.   )

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes NCO Financial Systems, Inc. (NCO), which files this Complaint and respectfully shows:

### PARTIES

1.    Plaintiff NCO is a Pennsylvania corporation with its principal place of business in Horsham, Pennsylvania.

2.    Defendant Keith Kreminski is a Louisiana citizen residing in Mandeville, Louisiana.

1

Fee $150.00
Process C29 (5) sns
X  Dktd caa
___ CtRmDep._____
___ Doc. No. 1

3.      Defendant Derek DeHoog is a Louisiana citizen residing in New Orleans, Louisiana.

4.      Defendant Donald Pesquie is a Louisiana citizen residing in New Orleans, Louisiana.

5.      Defendant Gerald Heap is a Louisiana citizen residing in Metairie, Louisiana.

6.      Defendant Financial Risk Mitigation, Inc. (FRM) is a Mississippi corporation with its principal place of business in Gulfport, Mississippi.

JURISDICTION

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), based upon the complete diversity of citizenship between the plaintiff, NCO, and the defendants, Kreminski, DeHoog, Pesquie, Heap, and FRM.

8.      NCO certifies that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

VENUE

9.      Pursuant to 28 U.S.C. § 1391(a), venue is proper in this district court because this is a judicial district where at least one of the defendants resides.

FACTS

10.     NCO is a national debt collection company with several divisions that provide various collection-related services.  The NCO Financial Investigative Services Division (FISD) offers investigative services, including:  background and financial investigations; skiptracing; asset and lien searches; and, real estate and environmental investigations.

2

11.    Kreminski was employed by Milliken & Michaels, Inc. (M&M) and its successor company, NCO, from approximately April 1, 1992 to June 14, 2004.  At the time of his separation, Kreminski was employed as an NCO salesperson in the FISD at NCO's Metairie, Louisiana office.

12.    DeHoog was employed by M&M and its successor company, NCO, from approximately May 29, 1996 to June 14, 2004.  At the time of his separation, DeHoog was employed as an NCO salesperson in the FISD at NCO's Metairie, Louisiana office.

13.    Pesquie was employed by M&M and its successor company, NCO, from approximately June 1, 1992 to June 14, 2004.  At the time of his separation, Pesquie was employed as an NCO financial analyst in the FISD at NCO's Metairie, Louisiana office.

14.    Heap was employed by M&M and its successor company, NCO, from approximately April 22, 1990 to June 14, 2004.  At the time of his separation, Heap was employed as an NCO financial analyst in the FISD at NCO's Metairie, Louisiana office.

15.    NCO's success and profitability as a business is highly dependent upon the protection of its confidential and proprietary information and trade secrets, including, but not limited to, information concerning its clients.

16.    Before the purchase of M&M by NCO, the individual defendants executed certain agreements.  The agreements prohibit the individual defendants from soliciting the business' clients and from competing with the business for a certain period of time after separation.  The agreements also prohibit the individual defendants from using or

3

disclosing, without authority, the business' confidential and proprietary information and trade secrets.

17.    On November 9, 1998, Kreminski executed his agreement.    The Kreminski Agreement, in pertinent part, provides as follows:

> Your obligations in this Agreement constitute mandatory conditions of your M&M employment.  Consequently, you agree that:
>
> (1)    Any client or potential client of M&M is M&M's property. Recognizing M&M clients and potential clients as M&M property rights, should you leave M&M for any reason, then for 18 months after your employment ends, whether you work in Louisiana or any other state, you will not contact nor solicit these identified clients and potential clients. You will also not assist anyone else, including your new employer or new co-employees, from contacting, soliciting or providing services for these clients or potential clients. You also agree that should you leave M&M and work in Louisiana in any of the parishes or municipalities in which M&M completes activities as identified on Exhibit 1 to this Agreement, then the same non-compete obligations exist for the identified clients and potential clients.  Finally, for the first 1 year period after your leaving M&M for any reason, you agree not to work in the credit reporting and the financial investigation industry in Louisiana in any of the parishes or municipalities in which M&M completes activities, as identified on Exhibit 1 to this Agreement.
>
> (2) You will never make use of or disclose M&M's trade secrets or confidential information. This prohibition includes the use or disclosure of any of M&M's training, sales or marketing materials, the identity of M&M clients known to you, and information about M&M's clients . . . .
>
> (3)    For 18 months after leaving M&M, if you work in Louisiana in any of the identified parishes or municipalities as included in Exhibit 1 to this Agreement, you will not hire any M&M employee, or induce, or seek to induce any M&M employee to leave M&M, so that this individual competes with M&M.

Exhibit A, Kreminski Agreement, at ¶¶ 4-6, pp. 1-2.

4

18.    The "Exhibit 1" referenced in the Kreminski Agreement lists numerous Louisiana parishes and municipalities that are subject to the non-competition and non-solicitation obligations contained in the Kreminski Agreement. *Id.*

19.    On May 29, 1996, DeHoog executed his agreement.  *See* Exhibit B, DeHoog Agreement.  On May 8, 1997, Heap executed a nearly identical agreement.  *See* Exhibit C, Heap Agreement.

20.    The DeHoog Agreement and Heap Agreement, in pertinent part, provide as follows:

> Your obligations in this agreement constitute important conditions of your M&M employment.  Consequently, you agree that during your employment with M&M and for two years after your relationship with M&M is terminated, you will not:
>
> (1)    compete with M&M, participate in any way, or serve in any capacity in any business or enterprise providing the same or similar services to those services provided by M&M, in competition with M&M, in any of the parishes or municipalities in which M&M completes activities in Louisiana listed on Exhibit A to this letter;
>
> (2)    use M&M's proprietary information, solicit any of M&M's customers, or prospective customers that you have solicited, to become customers of any competing business or enterprise that provides the same or similar services to those provided by M&M in any of the parishes or municipalities in which M&M completes activities in Louisiana listed on Exhibit A to this letter, . . . all of M&M's customers or such prospective customers being recognized by you as M&M's exclusive property;
>
> (3)    induce or seek to induce any employee of M&M to become employed other than by M&M, whether as employee, consultant, or otherwise; or
>
> (4)    make use of or disclose trade secrets or confidential information that you possess, whether now or at the time of the termination of our

5

relationship, relating to M&M's business or affairs or any of M&M's customers.

Exhibit B, DeHoog Agreement, at ¶ 2, p. 1; Exhibit C, Heap Agreement, at ¶ 2, p. 1.

21.    The "Exhibit A" referenced in the DeHoog Agreement and Heap Agreement lists numerous Louisiana parishes and municipalities that are subject to the non-competition and non-solicitation obligations contained in the agreements. *Id.*

22.    On October 28, 1992, Pesquie executed his agreement. The Pesquie Agreement, in pertinent part, provides as follows:

> Your obligations in this agreement constitute important conditions of your M&M employment. Consequently, you agree that, for two years after your relationship with M&M is terminated, you will not:
>
> (1)    participate in any way, or serve in any capacity in any business or enterprise providing the same or similar services to those services provided by M&M, in competition with M&M, in any of the parishes or municipalities in which M&M completes activities in Louisiana listed on Exhibit A to this letter;
>
> (2)    solicit any of M&M's customers, or prospective customers that you have solicited, to become customers of any competing business or enterprise that provides the same or similar services to those provided by M&M in any of the parishes or municipalities in which M&M completes activities in Louisiana listed on Exhibit A to this letter, . . . all of M&M's customers or such prospective customers being recognized by you as M&M's exclusive property;
>
> (3)    induce or seek to induce any employee of M&M to become employed other than by M&M, whether as employee, consultant, or otherwise; or
>
> (4)    make use of or disclose trade secrets or confidential information that you possess, whether now or at the time of the termination of our relationship, relating to M&M's business or affairs or any of M&M's customers.

6

Exhibit D, Pesquie Agreement, at ¶ 2, p. 1.

23.    The "Exhibit A" referenced in the Pesquie Agreement lists numerous Louisiana parishes and municipalities that are subject to the non-competition and non-solicitation obligations contained in the Pesquie Agreement. *Id.*

24.    While employed at NCO, the individual defendants formed FRM, a competing business. After forming the competing business, *and while still employed with NCO*, the individual defendants began to secretly solicit NCO employees for FRM.    Upon information and belief, *while still employed with NCO*, the individual defendants also began to secretly solicit NCO clients for FRM.  The individual defendants also began to secretly remove confidential and proprietary information and trade secrets from NCO, including NCO client contact information.

25.    The individual defendants' actions were in violation of their undivided duty of loyalty to NCO, and were intended to secure an unfair business advantage for FRM. Upon information and belief, the individual defendants' actions were done with the encouragement of FRM.

26.    On June 14, 2004, the individual defendants were separated from NCO.

27.    NCO has advised the individual defendants of their non-solicitation and non-competition obligations.  The individual defendants have confirmed to NCO that they created FRM, a competing business, and that they intend to compete.  NCO fears that the individual defendants will ignore their obligations, causing NCO to suffer irreparable harm.

7

28.    Defendants' wrongful actions have caused, and continue to cause, NCO to suffer damages, including, but not limited to, loss of profit, loss of business opportunity, loss of professional and business reputation, and loss of goodwill, all to be proven at the trial of this matter.

COUNT 1:  BREACH OF FIDUCIARY DUTY
(AGAINST INDIVIDUAL DEFENDANTS)

29.    NCO hereby incorporates, as if written *in extenso*, ¶¶ 1 - 28.

30.    As NCO employees, the individual defendants stood in special relationships of trust, confidence, and responsibility and thus owed fiduciary duties to NCO.

31.    The individual defendants breached their fiduciary obligations to NCO by unfairly competing with NCO while employees of NCO and by using and disclosing NCO's confidential and proprietary information and trade secrets for their and FRM's benefit.

32.    As a result of the individual defendants' breach of their fiduciary duties, NCO has suffered and continues to suffer damages in an amount to be determined at trial.

COUNT 2:  DECLARATORY JUDGMENT
(AGAINST INDIVIDUAL DEFENDANTS)

33.    NCO hereby incorporates, as if written *in extenso*, ¶¶ 1 - 32.

34.    Pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, NCO seeks and is entitled to a declaratory judgment that the agreements executed by the individual defendants and attached hereto as Exhibits A through D are lawful and enforceable.

COUNT 3:  INJUNCTION AND/OR BREACH OF CONTRACT
(AGAINST INDIVIDUAL DEFENDANTS)

35.    NCO hereby incorporates, as if written *in extenso*, ¶¶ 1 - 34.

8

36.   The individual defendants executed certain agreements prohibiting them from competing and soliciting NCO's clients and employees for a period of time following their respective separation date from NCO.   *See* Exhibit A, Kreminski Agreement; Exhibit B, DeHoog Agreement; Exhibit C, Heap Agreement; Exhibit D, Pesquie Agreement.   The individual defendants' agreements also prohibit them from using or disclosing, without authority, NCO's confidential and proprietary information and trade secrets.   *Id.*

37.   NCO fears that the individual defendants will violate, or have already violated, their non-competition, non-solicitation, and non-disclosure obligations.

38.   NCO seeks and is entitled to an injunction, enforcing the terms of the executed agreements.   To the extent that any individual defendant has already breached his agreement, NCO is entitled to any and all resulting damages.

<u>COUNT 4: VIOLATION OF THE LOUISIANA UNIFORM TRADE SECRETS ACT
(AGAINST INDIVIDUAL DEFENDANTS AND FRM)</u>

39.   NCO hereby incorporates, as if written *in extenso*, ¶¶ 1 - 38.

40.   Pursuant to the Louisiana Uniform Trade Secrets Act, La. Rev. Stat. Ann. § 51:1431 (West 2004), *et seq.*, it is a violation of Louisiana law to misappropriate trade secrets.

41.   NCO possesses valuable trade secrets that are not generally known to the public at large.   Such trade secrets include, but are not limited to, the following:   monthly solicitor reports; client summaries; in-house account summaries; client lists; customer pricing

schedules; and, generally, confidential client business information that provides NCO with a competitive advantage to service its clients.

42.    NCO has taken reasonable steps to protect its trade secrets. Such protective steps include, but are not limited to, the following: implementing policies and procedures that prohibit the disclosure and use of such information; requiring employees to sign non-competition, non-solicitation, and non-disclosure agreements; and, prohibiting employees from removing certain materials from the NCO offices.

43.    Upon information and belief, the individual defendants misappropriated NCO's trade secrets, including information contained within the following types of materials, or the actual materials: access to the lead database; monthly solicitor reports; client summaries; in-house account summaries; client lists containing contact information; client reporting forms; operational summaries; client quarterly and annual reporting; analyses regarding placements and type of accounts; internal memoranda and summaries; client report formats; proprietary listing of research sources and vendors; and, customer pricing schedules. Such misappropriation was made without the express or implied consent of NCO, and done by the individual defendants while knowing they had a duty to maintain the secrecy of said trade secrets.

44.    Upon information and belief, FRM, through the individual defendants, misappropriated NCO's trade secrets, as detailed in ¶ 43, by acquiring and using such trade secrets without the express or implied consent of NCO while knowing it obtained

the trade secrets from or through another it knew, or had reason to know, owed a duty to maintain the secrecy of the trade secrets.

45.    The misappropriation of NCO's trade secrets by defendants was willful and malicious.

46.    As a result of defendants' violations of the Louisiana Uniform Trade Secrets Act, NCO has suffered and continues to suffer damages in an amount to be determined at trial.

<u>COUNT 5:  VIOLATION OF THE LOUISIANA UNFAIR TRADE
PRACTICES ACT AND CONSUMER PROTECTION LAW
(AGAINST INDIVIDUAL DEFENDANTS AND FRM)</u>

47.    NCO hereby incorporates, as if written *in extenso*, ¶¶ 1 - 46.

48.    Pursuant to the Louisiana Unfair Trade Practices Act and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1401 (West 2004), *et seq.*, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

49.    While still employed with NCO, the individual defendants began to secretly solicit NCO employees for FRM.  Upon information and belief, while still employed with NCO, the individual defendants began to secretly solicit NCO clients for FRM.  The individual defendants also began to secretly remove confidential and proprietary information and trade secrets from NCO, including NCO client contact information.

50.    Upon information and belief, the individual defendants' actions were done with FRM's encouragement.

11

51.    Defendants' acts constitute unfair trade practices under Louisiana law and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to NCO, a competitor.

52.    As result of defendants' violations of the Louisiana Unfair Trade Practices and Consumer Protection Law, NCO has suffered and continues to suffer damages in an amount to be determined at trial.

COUNT 6: ENRICHMENT WITHOUT CAUSE
(AGAINST INDIVIDUAL DEFENDANTS AND FRM)

53.    NCO hereby incorporates, as if written *in extenso*, ¶¶ 1 - 52.

54.    Pursuant to La. Civ. Code Ann. art. 2298 (West 2004), "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person."

55.    Defendants have wrongfully accepted and retained, and continue to accept and retain, the benefits of the proprietary and confidential information and trade secrets misappropriated from NCO.

56.    As a result of their wrongful conduct, defendants have been and continue to be enriched without cause at the expense of NCO in an amount to be determined at trial.

COUNT 7: CONVERSION
(AGAINST INDIVIDUAL DEFENDANTS AND FRM)

57.    NCO hereby incorporates, as if written *in extenso*, ¶¶ 1 - 56.

12

58. Defendants have wrongfully possessed and used, and continue to wrongfully possess and use, NCO's proprietary and confidential information and trade secrets for their benefit, all to the detriment of NCO.

59. As a result of defendants' conversion of NCO's property, NCO has suffered and continues to suffer damages in an amount to be determined at trial.

<u>COUNT 8: INJUNCTION AND/OR TORTIOUS INTERFERENCE WITH A CONTRACT OR BUSINESS RELATIONSHIP (NEW YORK AND CALIFORNIA LAW) (AGAINST INDIVIDUAL DEFENDANTS)</u>

60. NCO hereby incorporates, as if written *in extenso*, ¶¶ 1 - 59.

61. NCO has an understanding or agreement with the clients formerly serviced by the individual defendants to provide certain collection-related services when needed. Many of these clients reside in New York or California.

62. Through this understanding or agreement, NCO has existing or prospective legal or contractual rights.

63. The individual defendants are aware of the business relationships that NCO enjoys with the clients. NCO fears, however, that, in violation of their agreements and applicable law, the individual defendants will tortiously interfere with, or already have tortiously interfered with, the client relationships by inducing or otherwise causing the clients to breach or sever their business relationships with NCO.

64. NCO seeks and is entitled to an injunction, enjoining the individual defendants from tortiously interfering with an NCO client relationship. To the extent that any

individual defendant has already tortiously interfered with an NCO client relationship, NCO is entitled to any and all resulting damages.

### COUNT 9:  TORTIOUS INTERFERENCE WITH A CONTRACT OR BUSINESS RELATIONSHIP (MISSISSIPPI LAW) (AGAINST FRM)

65.     NCO hereby incorporates, as if written *in extenso*, ¶¶ 1 - 64.

66.     The individual defendants entered into certain agreements with NCO, prohibiting them from competing with NCO and soliciting NCO's clients and employees for a certain period of time after their respective separation date from NCO.  *See* Exhibit A, Kreminski Agreement; Exhibit B, DeHoog Agreement; Exhibit C, Heap Agreement; Exhibit D, Pesquie Agreement.

67.     Upon information and belief, FRM was aware of the agreements entered into by the individual defendants, but, nevertheless, intentionally and improperly interfered with said agreements by inducing or otherwise causing the individual defendants to breach or sever their agreements with NCO.

68.     As a result of FRM's tortious interference with the contracts NCO had with the individual defendants, NCO has suffered and continues to suffer damages in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, the premises considered, plaintiff, NCO Financial Systems, Inc., respectfully requests that, after due proceedings are had, the Court enter judgment against defendants, Keith Kreminski, Derek DeHoog, Donald Pesquie, Gerald Heap, and Financial Risk Mitigation, Inc., granting the requested injunctions and declaratory relief

14

and awarding plaintiff compensatory damages, punitive or exemplary damages, reasonable expenses, costs, interest, attorney's fees, and any other relief to which it is entitled.

Respectfully Submitted,

David Israel (# 7174) (T.A.)
Kevin G. Barreca (#24015)
Bryan C. Shartle (# 27640)
SESSIONS, FISHMAN & NATHAN, L.L.P.
201 St. Charles Avenue, 35th Floor
New Orleans, Louisiana 70170-3500
Telephone: (504) 582-1500
Facsimile: (504) 582-1523

Attorneys for Plaintiff,
NCO Financial Systems, Inc.

H \DI\NCO HR FILES\Kreminski, Keith, et al (7007-19038)\Pleadings\Complaint doc

15

*Milliken & Michaels*
*Credit Services*

3850 N. Causeway Blvd., 3rd Floor
Metairie, Louisiana 70002

Keith Kreminski                                         November 9, 1998
18 Peace Court
Mandeville, LA

RE:    AGREEMENT NOT TO UNFAIRLY COMPETE WITH OR SOLICIT
       EMPLOYEES FROM MILLIKEN & MICHAELS- CREDIT SERVICES DIVISION

Dear Keith:

The purpose of this letter is to confirm your agreement with Milliken & Michaels, Inc., and its
successors or assigns, including the Credit Services Division (all referred to as "M&M"), not to:
1) compete unfairly with M&M; 2) use or reveal M&M's trade secrets and proprietary
information; or, 3) solicit M&M's employees.

You recognize that M&M considers its clients, the client relationships and the business
information that develops with those clients, to be a valuable asset, which is property owned by
M&M.    Your improper solicitation of those clients, or interference with those client
relationships, is an improper taking of an important M&M property right.

Your obligations in this Agreement constitute mandatory conditions of your M&M
employment. Consequently, you agree that:

       (1)    Any client or potential client of M&M is M&M's property. Recognizing M&M
clients and potential clients as M&M property rights, should you leave M&M for any reason,
then for 18 months after your employment ends, whether you work in Louisiana or any other
state, you will not contact nor solicit these identified clients and potential clients. You will also
not assist anyone else, including your new employer or new co-employees, from contacting,
soliciting or providing services for these clients or potential clients. You also agree that should
you leave M&M and work in Louisiana in any of the parishes or municipalities in which M&M
completes activities as identified on Exhibit 1 to this Agreement, then the same non-compete
obligations exist for the identified clients and potential clients. Finally, for the first 1 year
period after your leaving M&M for any reason, you agree not to work in the credit reporting and
the financial investigation industry in Louisiana in any of the parishes or municipalities in which
M&M completes activities, as identified on Exhibit 1 to this Agreement.

       (2)    You will never make use of or disclose M&M's trade secrets or confidential
information. This prohibition includes the use or disclosure of any of M&M's training, sales or
marketing materials, the identity of M&M clients known to you, and information about M&M's
clients, such as:  the information for due diligence that has been requested from clients, the
regular requests for property or financial background checks and analyses; the review of title
reports and real estate information; the volume or type of business placed with M&M, debt
collection statistics and revenues, or placements received from the clients. You will not make

EXHIBIT

A

any disparaging statements about M&M, or make any comments regarding M&M's policies that could harm the Company's reputation.

(3)     For 18 months after leaving M&M, if you work in Louisiana in any of the identified parishes or municipalities as included in Exhibit 1 to this Agreement, you will not hire any M&M employee, or induce, or seek to induce any M&M employee to leave M&M, so that this individual competes with M&M.

(4)     Should you leave M&M, you will notify your new employer of your obligations pursuant to this Agreement.

(5)     If you ever have any questions regarding your obligations pursuant to this Agreement then you will meet with me so that all questions are addressed. Both of us agree to act in the best of faith, so that you may abide by your obligations.

Should a court ever decide that any portion of this Agreement is not enforceable, the unenforceable provision may be modified by a court to the extent necessary to satisfy the intent of this Agreement and to be consistent with applicable laws. In addition, the remainder of your obligations shall be enforced to the fullest extent permitted by law. The losing party to any enforcement action pursuant to this Agreement will be responsible to pay the winning party's reasonable attorney's fees and costs, not to exceed $10,000.00.

You agree that M&M will be entitled to enjoin you, without a showing of irreparable injury or special damages, if you threaten to or actually breach this Agreement. M&M will also be entitled to all other legal remedies available.

If you have any questions regarding your obligations, I encourage you to seek counsel before executing this Agreement. Please acknowledge your understanding of and agreement to these terms by signing and dating 1 enclosed copy of this letter and returning the signed copy to me. You may keep the second copy for your records.

Very truly yours,

MILLIKEN & MICHAELS, INC.

By: _____

Its: _Genera l Mgr._

UNDERSTOOD AND AGREED TO THIS 9th DAY OF November, 1998.

Signature: _____   Name (Please Print): _KEITH KROMINSKY_

M&M-Corp/salescontract/CreditServices.contract

UNFAIR COMPETITION AGREEMENT

## EXHIBIT A

### PARISHES AND MUNICIPALITIES IN LOUISIANA

### IN WHICH

### COMPETITION PROHIBITED

| Parishes | Municipalities |
|---|---|
| Acadia | Crowley |
| Allen | Oberlin |
| Ascension | Donaldsonville |
| Beauregard | De Ridder |
| Beinville | Arcadia |
| Bossier | Benton |
| Caddo | Shreveport |
| Calcasieu | Lake Charles |
| Catahoula | Harrisonburg |
| Claiborne | Homer |
| Concordia | Vidalia |
| E. Baton Rouge | Baton Rouge |
| E. Carroll | Lake Providence |
| E. Feliciana | Clinton |
| Evangeline | Ville Platte |
| Franklin | Winnsboro |
| Grant | Colfax |
| Iberia | New Iberia |
| Iberville | Plaquemine |
| Jackson | Jonesboro |
| Jefferson | Gretna |
| Jefferson Davis | Jennings |
| Lafayette | Lafayette |
| Lafourche | Thibodaux |
| LaSalle | Jena |
| Lincoln | Ruston |
| Livingston | Livingston |
| Madison | Tallulah |
| Natchitoches | Natchitoches |
| Orleans | New Orleans |

UNFAIR COMPETITION AGREEMENT

## PARISHES AND MUNICIPALITIES IN LOUISIANA

## IN WHICH

## COMPETITION PROHIBITED

(cont.)

| Parishes | Municipalities |
|---|---|
| Ouachita | Monroe |
| Plaquemines | Pointe-a-La-Hache |
| Pointe Coupee | New Roads |
| Rapides | Alexandria |
| Sabine | Metairie |
| St. Bernard | Chalmette |
| St. Charles | Hahnville |
| St. Helena | Greensburg |
| St. James | Kenner |
| St. John the Baptist | Edgard |
| St. Landry | Opelousas |
| St. Martin | St. Martinville |
| St. Mary | Franklin |
| St. Tammany | Covington |
| Tangipahoa | Amite |
| Terrebone | Houma |
| Union | Farmerville |
| Vermillion | Abbeville |
| Washington | Franklinton |
| Webster | Minden |
| W. Baton Rouge | Port Allen |
| W. Carroll | Oak Grove |
| W. Feliciana | St. Francisville |

*Milliken & Michaels Credit Services*

May 29, 1996

Derek D. DeHoog
3509 Lake Villa Dr.
Metairie, LA 70002

RE:   AGREEMENT NOT TO COMPETE WITH OR SOLICIT EMPLOYEES
      FROM MILLIKEN & MICHAELS CREDIT SERVICES

Dear Derek:

The purpose of this letter is to confirm your agreement not to compete with Milliken & Michaels Credit Services, Inc., or any affiliated Milliken & Michaels entity (all such entities referred to as "M&M"), use or reveal trade secrets and proprietary information of M&M or to solicit M&M's employees.

Your obligations in this agreement constitute important conditions of your M&M employment.  Consequently, you agree that during your employment with M&M and for two years after your relationship with M&M is terminated, you will not:

(1)  compete with M&M, participate in anyway , or serve in any capacity in any business or enterprise providing the same or similar services to those services provided by M&M, in competition with M&M, in any of the parishes or municipalities in which M&M completes activities in Louisiana listed on Exhibit A to this letter;

(2)  use M&M's proprietary information, solicit any of M&M's customers, or prospective customers that you have solicited, to become customers of any competing business or enterprise that provides the same or similar services to those provided by M&M in any of the parishes or municipalities in which M&M completes activities in Louisiana listed on Exhibit A to this letter, including the customers identified in your Prime Customer Lists, all of M&M's customers or such prospective customers being recognized by you as M&M's exclusive property;

(3)  induce or seek to induce any employee of M&M to become employed other than by M&M, whether as employee, consultant, or otherwise; or

(4)  make use of or disclose trade secre ts or confidential information that you possess, whether now or at the time of the termination of our relationship, relating to M&M's business or affairs or any of M&M's customers.

**EXHIBIT**

B

3850 N. Causeway Blvd., 3rd Floor, Metairie, Louisiana 70002

Mailing Address: P.O. Box 7768, Metairie, Louisiana 70010
(National Toll Free) 1/800/ 755-0435 • (Louisiana)504/837-6320 • FAX # 1/504/835-2872

**NONCOMPETITIVE AGREEMENT** *Milliken & Michaels Credit Services*
**Page Two**

The terms of this agreement are intended to be severable and you acknowledge that this agreement may be enforced by M&M to the fullest extent possible. Should any portion of this agreement be found unenforceable, then the remainder of the agreement shall be enforced to the fullest extent permitted by law.

You agree that M&M will be entitled to enjoin you, if you threaten to or actually breach this agreement. M&M will also be entitled to all other legal remedies available.

Your Prime Customer List will be updated and reviewed with you to confirm its accuracy. The reviewing with you of your Prime Customer List will represent the continued reaffirmation of your non-competition and non-solicitation responsibilities.

Should you have any questions regarding your obligations, I encourage you to seek counsel before executing this Agreement.

Please acknowledge your understanding of and agreement to these terms by signing and dating the enclosed copy of this letter and returning it to me. You may keep this copy for your records.

Very truly yours,

MILLIKEN & MICHAELS CREDIT SERVICES, INC.

By: _____

Its: _Sales Manager_ _____


UNDERSTOOD AND AGREED THIS 29th DAY OF May, 1996.

_____
Employee Signature

_Derek DeHoog_
Name (Please Print)


3850 N. Causeway Blvd., 3rd Floor, Metairie, Louisiana 70002

Mailing Address: P.O. Box 7768, Metairie, Louisiana 70010
(National Toll Free) 1/800/ 755-0435 • (Louisiana)504/837-6320 • FAX # 1/504/835-2872

# EXHIBIT A

## PARISHES AND MUNICIPALITIES IN LOUISIANA

### IN WHICH

### COMPETITION PROHIBITED

| Parishes | Municipalities |
|---|---|
| Acadia | Crowley |
| Allen | Oberlin |
| Ascension | Donaldsonville |
| Beauregard | De Ridder |
| Beinville | Arcadia |
| Bossier | Benton |
| Caddo | Shreveport |
| Calcasieu | Lake Charles |
| Catahoula | Harrisonburg |
| Claiborne | Homer |
| Concordia | Vidalia |
| E. Baton Rouge | Baton Rouge |
| E. Carroll | Lake Providence |
| E. Feliciana | Clinton |
| Evangeline | Ville Platte |
| Franklin | Winnsboro |
| Grant | Colfax |
| Iberia | New Iberia |
| Iberville | Plaquemine |
| Jackson | Jonesboro |
| Jefferson | Gretna |
| Jefferson Davis | Jennings |
| Lafayette | Lafayette |
| Lafourche | Thibodaux |
| LaSalle | Jena |
| Lincoln | Ruston |
| Livingston | Livingston |
| Madison | Tallulah |
| Natchitoches | Natchitoches |
| Orleans | New Orleans |

06/10/04   17:09 FAX 716 404 2113         NCO FINANCIAL SYSTEMS

## PARISHES AND MUNICIPALITIES IN LOUISIANA

### IN WHICH

### COMPETITION PROHIBITED

(cont.)

| Parishes | Municipalities |
|----------|----------------|
| Ouachita | Monroe |
| Plaquemines | Pointe-a-La-Hache |
| Pointe Coupee | New Roads |
| Rapides | Alexandria |
| Sabine | Metairie |
| St. Bernard | Chalmette |
| St. Charles | Hahnville |
| St. Helena | Greensburg |
| St. James | Kenner |
| St. John the Baptist | Edgard |
| St. Landry | Opelousas |
| St. Martin | St. Martinville |
| St. Mary | Franklin |
| St. Tammony | Covington |
| Tangipahoa | Amite |
| Terrebone | Houma |
| Union | Farmerville |
| Vermillion | Abbeville |
| Washington | Franklinton |
| Webster | Minden |
| W. Baton Rouge | Port Allen |
| W. Carroll | Oak Grove |
| W. Feliciana | St. Francisville |

*Milliken & Michaels Credit Services*

May 8, 1997

Gerald A. Heap, Jr.
4600 Gary Mikel
Metairie, LA 70002

RE:   AGREEMENT NOT TO COMPETE WITH OR SOLICIT EMPLOYEES
      FROM MILLIKEN & MICHAELS CREDIT SERVICES

Dear Jerry:

      The purpose of this letter is to confirm your agreement not to compete with Milliken & Michaels Credit Services, Inc., or any affiliated Milliken & Michaels entity (all such entities referred to as "M&M"), use or reveal trade secrets and proprietary information of M&M or to solicit M&M's employees.

Your obligations in this agreement constitute important conditions of your M&M employment. Consequently, you agree that during your employment with M&M and for two years after your relationship with M&M is terminated, you will not:

    (1)  compete with M&M, participate in anyway, or serve in any capacity in any business or enterprise providing the same or similar services to those services provided by M&M, in competition with M&M, in any of the parishes or municipalities in which M&M completes activties in Louisiana listed on Exhibit A to this letter;

    (2)  use M&M's proprietary information, solicit a ny of M&M's customers, or prospective customers that you have solicited, to become customers of any competing business or enterprise that provides the same or similar services to those provided by M&M in any of the parishes or municipalities in which M&M completes activities in Louisiana listed on Exhibit A to this letter, all of M&M's customers or such prospective customers being recognized by you as M&M's exclusive property;

    (3)  induce or seek to induce any employee of M&M to become employed other than by M&M, whether as employee, consultant, or otherwise; or

    (4)  make use of or disclose trade secrets or confidential information that you possess, whether now  or at the time of the termination of our relationship, relating to M&M's business or affairs or any of M&M's customers.

3850 N. Causeway Blvd., 3rd Floor, Metairie, Louisiana 70002

Mailing Address: P.O. Box 7768, Metairie, Louisiana 70010
(National Toll Free) 1/800/ 755-0435 • (Louisiana)504/837-6320 • FAX # 1/504/835-

EXHIBIT

C



*Milliken & Michaels Credit Services*

NONCOMPETITIVE AGREEMENT
Page Two

The terms of this agreement are intended to be severable and you acknowledge that this agreement may be enforced by M&M to the fullest extent possible. Should any portion of this agreement be found unenforceable, then the remainder of the agreement shall be enforced to the fullest extent permitted by law.

You agree that M&M will be entitled to enjoin you, if you threaten to or actually breach this agreement. M&M will also be entitled to all other legal remedies available.

Should you have any questions regarding your obligations, I encourage you to seek counsel before executing this Agreement.

Please acknowledge your understanding of and agreement to these terms by signing and dating the enclosed copy of this letter and returning it to me. You may keep this copy for your records.

Very truly yours,
MILLIKEN & MICHAELS CREDIT SERVICES, INC.

_Waymen . Le Blanc_
By: Manager s Signature

_President_
Its: Title

UNDERSTOOD AND AGREED THIS 8th DAY OF May, 1997.

_[signature]_
Employee (Signature)

G. A. HEAP, JR
Name (Please Print)

3850 N. Causeway Blvd., 3rd Floor, Metairie, Louisiana 70002

Mailing Address: P.O. Box 7768, Metairie, Louisiana 70010
(National Toll Free) 1/800/ 755-0435 • (Louisiana)504/837-6320 • FAX # 1/504/835-2872



## EXHIBIT A

## <u>PARISHES AND MUNICIPALITIES IN LOUISIANA</u>

## <u>IN WHICH</u>

## <u>COMPETITION PROHIBITED</u>

| <u>Parishes</u> | <u>Municipalities</u> |
|---|---|
| Acadia | Crowley |
| Allen | Oberlin |
| Ascension | Donaldsonville |
| Beauregard | De Ridder |
| Beinville | Arcadia |
| Bossier | Benton |
| Caddo | Shreveport |
| Calcasieu | Lake Charles |
| Catahoula | Harrisonburg |
| Claiborne | Homer |
| Concordia | Vidalia |
| E. Baton Rouge | Baton Rouge |
| E. Carroll | Lake Providence |
| E. Feliciana | Clinton |
| Evangeline | Ville Platte |
| Franklin | Winnsboro |
| Grant | Colfax |
| Iberia | New Iberia |
| Iberville | Plaquemine |
| Jackson | Jonesboro |
| Jefferson | Gretna |
| Jefferson Davis | Jennings |
| Lafayette | Lafayette |
| Lafourche | Thibodaux |
| LaSalle | Jena |
| Lincoln | Ruston |
| Livingston | Livingston |
| Madison | Tallulah |
| Natchitoches | Natchitoches |
| Orleans | New Orleans |

<u>PARISHES AND MUNICIPALITIES IN LOUISIANA</u>

<u>IN WHICH</u>

<u>COMPETITION PROHIBITED</u>

(cont.)

| <u>Parishes</u> | <u>Municipalities</u> |
|---|---|
| Ouachita | Monroe |
| Plaquemines | Pointe-a-La-Hache |
| Pointe Coupee | New Roads |
| Rapides | Alexandria |
| Sabine | Metairie |
| St. Bernard | Chalmette |
| St. Charles | Hahnville |
| St. Helena | Greensburg |
| St. James | Kenner |
| St. John the Baptist | Edgard |
| St. Landry | Opelousas |
| St. Martin | St. Martinville |
| St. Mary | Franklin |
| St. Tammony | Covington |
| Tangipahoa | Amite |
| Terrebone | Houma |
| Union | Farmerville |
| Vermillion | Abbeville |
| Washington | Franklinton |
| Webster | Minden |
| W. Baton Rouge | Port Allen |
| W. Carroll | Oak Grove |
| W. Feliciana | St. Francisville |

# *Milliken & Michaels Credit Services*

TO:     DONALD PESQUIE

DATE:   OCTOBER 28, 1992

RE:     AGREEMENT NOT TO COMPETE WITH
        OR SOLICIT EMPLOYEES FROM M&M

The purpose of this letter is to confirm your agreement not to compete with Milliken & Michaels Credit Services, Inc., or any affiliated Milliken & Michaels entity (all such entities referred to as "M&M") or to solicit M&M's employees.

Your obligations in this agreement constitute important conditions of your M&M employment. Consequently, you agree that, for two years after your relationship with M&M is terminated, you will not:

(1) participate in any way, or serve in any capacity in any business or enterprise providing the same or similar services to those services provided by M&M, in competition with M&M, in any of the parishes or municipalities in which M&M completes activities in Louisiana listed on Exhibit A to this letter;

(2) solicit any of M&M's customers, or prospective customers that you have solicited, to become customers of any competing business or enterprise that provides the same or similar services to those provided by M&M in any of the parishes or municipalities in which M&M completes activities in Louisiana listed on Exhibit A to this letter, including the customers identified in your Prime Customer Lists, all of M&M's customers or such prospective customers being recognized by you as M&M's exclusive property;

(3) induce or seek to induce any employee of M&M to become employed other than by M&M, whether as employee, consultant, or otherwise; or

(4) make use of or disclose trade secrets or confidential information that you possess, whether now or at the time of the termination of our relationship, relating to M&M's business or affairs or any of M&M's customers.

The terms of this agreement are intended to be severable and you acknowledge that this agreement may be enforced by M&M to the fullest extent possible. Should any portion of this agreement be found unenforceable, then the remainder of the agreement shall be enforced to the fullest extent permitted by law.

3850 N. Causeway Blvd., 2nd Floor, Metairie, Louisiana 70002

Mailing Address: P.O. Box 7768, Metairie, Louisiana 70010
(National Toll Free) 1/800/755-0435 • (Louisiana) 504/837-6320 • FAX # 1/504/835-28

**EXHIBIT**

NONCOMPETITIVE AGREEMENT
Page Two


You agree that M&M will be entitled to enjoin you, if you threaten to or actually breach this agreement. M&M will also be entitled to all other legal remedies available.

Your Prime Customer List will be updated and reviewed with you to confirm its accuracy. The reviewing with you of your Prime Customer List will represent the continued reaffirmation of your non-competition and non-solicitation responsibilities.

Should you have any questions regarding your obligations, I encourage you to seek counsel before executing this Agreement.

Please acknowledge your understanding of and agreement to these terms by signing and dating the enclosed copy of this letter and returning it to me. You may keep this copy for your records.

Very truly yours,

MILLIKEN & MICHAELS
CREDIT SERVICES, INC.

By: _____

Its: _____


Understood and Agreed this 25th day of October, 1992.

_____
DONALD PESQUE

EXHIBIT A

PARISHES AND MUNICIPALITIES IN LOUISIANA

IN WHICH

COMPETITION PROHIBITED

| Parishes | Municipalities |
|----------|----------------|
| Acadia | Crowley |
| Allen | Oberlin |
| Ascension | Donaldsonville |
| Beauregard | De Ridder |
| Beinville | Arcadia |
| Bossier | Benton |
| Caddo | Shreveport |
| Calcasieu | Lake Charles |
| Catahoula | Harrisonburg |
| Claiborne | Homer |
| Concordia | Vidalia |
| E. Baton Rouge | Baton Rouge |
| E. Carroll | Lake Providence |
| E. Feliciana | Clinton |
| Evangeline | Ville Platte |
| Franklin | Winnsboro |
| Grant | Colfax |
| Iberia | New Iberia |
| Iberville | Plaquemine |
| Jackson | Jonesboro |
| Jefferson | Gretna |
| Jefferson Davis | Jennings |
| Lafayette | Lafayette |
| Lafourche | Thibodaux |
| LaSalle | Jena |
| Lincoln | Ruston |
| Livingston | Livingston |
| Madison | Tallulah |
| Natchitoches | Natchitoches |
| Orleans | New Orleans |

PARISHES AND MUNICIPALITIES IN LOUISIANA

IN WHICH

COMPETITION PROHIBITED

(cont.)

| Parishes | Municipalities |
|---|---|
| Ouachita | Monroe |
| Plaquemines | Pointe-a-La-Hache |
| Pointe Coupee | New Roads |
| Rapides | Alexandria |
| Sabine | Metairie |
| St. Bernard | Chalmette |
| St. Charles | Hahnville |
| St. Helena | Greensburg |
| St. James | Kenner |
| St. John the Baptist | Edgard |
| St. Landry | Opelousas |
| St. Martin | St. Martinville |
| St. Mary | Franklin |
| St. Tammony | Covington |
| Tangipahoa | Amite |
| Terrebone | Houma |
| Union | Farmerville |
| Vermillion | Abbeville |
| Washington | Franklinton |
| Webster | Minden |
| W. Baton Rouge | Port Allen |
| W. Carroll | Oak Grove |
| W. Feliciana | St. Francisville |